UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RYAN BOYER and GINA CRITELLI, | § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:21-cv-1660 |
| EQUIFAX INFORMATION SERVICES LLC, TRANS UNION LLC, and NATIONSTAR MORTGAGE LLC | § § § § § § | With Jury Demand Endorsed |
| Defendants. | § § | |

# COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiffs, Ryan Boyer and Gina Critelli ("Plaintiffs"), by and through counsel, for their Complaint against Defendants, Equifax Information Services LLC**,** Trans Union LLC, and Nationstar Mortgage LLC, jointly, severally, and in solido, state as follows:

## I.   INTRODUCTION

1. Two of the Defendants are, consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and one Defendant, Nationstar Mortgage LLC, is a furnisher of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Plaintiffs seek to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II.  PARTIES

2. Plaintiffs, Ryan Boyer and Gina Critelli, are natural persons residing in Allegheny County, Pennsylvania. They are "consumers," as defined by the FCRA, 15 U.S.C. § 1681a(c) and victims of repeated false credit reporting.

Made Defendants herein are:

3. Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309.  Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4. Upon information and belief, Defendant Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. §

1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

5.  Upon information and belief, Defendant Nationstar Mortgage LLC or Mr. Cooper, which may also hereinafter be referred to as "Nationstar," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Delaware limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 8950 Cypress Waters Blvd., Coppell, Texas 75019. Nationstar is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

6.  As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax and TransUnion.

### III. JURISDICTION AND VENUE

7.  Plaintiffs respectfully assert that this Honorable Court has jurisdiction in this case arises under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiffs also asserts actions under states' laws which may be brought within the supplemental jurisdiction of this

Court and Plaintiffs respectfully requests that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

8. Venue is proper in this District, because CRA Defendants and Nationstar transact business in this District. Nationstar's headquarters is located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiffs' claims against Defendants occurred in the Northern District of Texas as further described. 28 U.S.C. § 1391.

9. Venue is further proper in this District, because CRA Defendants entered into agreements with Nationstar in this judicial district to receive credit reporting data concerning Plaintiffs. Any and all requests to investigate Plaintiffs' dispute sent from the CRA Defendants as part of their reinvestigation was submitted to Nationstar's headquarters and investigated by the furnisher Nationstar using Nationstar's resources located at or closely connected to this judicial district. Nationstar managed Plaintiffs' mortgage from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV. FACTUAL ALLEGATIONS

10. Sometime in November 2019, Plaintiffs secured a mortgage for their home at 1921 Chislett Street, Pittsburgh, Allegheny County, Pennsylvania, 15206 with Nationstar Mortgage LLC which acted as the servicer for USAA Federal Savings Bank, (hereinafter, "Nationstar mortgage account").

11. On or around November 2020 Plaintiff sought to refinance with their loan with Quicken Loans.

12. Plaintiffs were current with payments to their Nationstar mortgage account through October 2020. (See Exhibit "A" Nationstar payment history).

13. The Payoff Quote for the Nationstar mortgage account of $305,380.60 was good through November 18, 2020. (See Exhibit "B", Correspondence and Nationstar Payoff Quote Information).

14. As they began to inquire and close in on a refinance with Quicken, on November 4, 2020, there were three "Unapplied Funds" transactions for $99,999.99 and one for $5,178.12. There were payment reversals. (See Exhibit "A").

15. On December 1, 2020, there were three "Unapplied Funds" transactions for $99,999.99 and one transaction for $6,349.34. Again, there were no payment reversals. (See Id.).

16. On December 4, 2020, there was a "Fees" transaction for $55.08 and then a "Principal Payoff" transaction for $301,741.46. (See Id.).

17. Plaintiffs allege that they were habitually timely payors to their Nationstar mortgage account and due to the refinancing, they had to stop making a traditional mortgage payment for November 2020 through no fault of their own.

18. The payoff quote itself was good through November 18, 2020. (See Exhibit "B").

19. The transaction history shows, in pertinent part, six transactions for $99,999.99 between November 4, 2020 and December 1, 2020 with no payment reversals. (See Exhibit "A").

20. The transaction history shows the entire loan was paid in full on December 4, 2020 which is within 30 days of November 18, 2020 to which that payoff amount was good through. (See Exhibit "A").

21. Due to all of this, Plaintiffs allege that during this service transfer, there are records

of more than enough funds applied on time and under contract to negate any possibility of being late for a month nearing the end of this loan with Nationstar.

22. Nevertheless, the Plaintiffs' each noticed errors on their respective credit reports pertaining to the Nationstar mortgage account.

23. Sometime in December 2020, Plaintiff Ryan Boyer obtained his tri-merge credit report, and in February 2021, Plaintiff Gina Critelli obtained her tri-merge credit report. (See Exhibit "C", Ryan Boyer's Tri-merge Credit Report, See Exhibit "D", Plaintiff Gina Critelli's Tri-merge Credit Report).

24. Within each of their Equifax credit reports, Plaintiffs noticed that Equifax reported their Nationstar mortgage account as "Payment Status – Late 30 Days".

25. Within each of their Trans Union credit reports, Plaintiffs noticed that Trans Union reported their Nationstar mortgage account as "Payment Status – Late 30 Days".

26. On or about March 31, 2021, Plaintiffs sent direct disputes to Equifax, Experian Information Solutions, Inc. ("Experian")[1], and Trans Union. The disputes requested that the CRA Defendants investigate the reporting of the Nationstar mortgage account. Plaintiffs requested that under the FCRA, the CRA Defendants conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiffs' credit reports concerning the Nationstar mortgage account. (See Exhibit "E", Plaintiffs' unsigned dispute letters to each CRA Defendant, See Exhibit "F", Evidence submitted with each dispute letter).

27. Within these dispute letters, Plaintiffs described in detail the issues and the

---

[1] Experian also reported a late notation for December 2020 on the Nationstar tradeline but upon receiving the same disputes as Equifax and Trans Union, Experian made the appropriate corrections for each Plaintiff by removing any late payment notation. Therefore, Experian is not a party to this suit.

misreporting of their payments and enclosed their copies of their past and current payment history on the Nationstar mortgage account.

28. Equifax received Plaintiff Ryan Boyer's dispute letter on April 2, 2021. (See Exhibit "G", Certified Mail Receipt and Proof of Delivery for Tracking No. 70203160000115157670).

29. Upon information and belief, Equifax did not respond to Plaintiff Ryan Boyer's dispute in clear violation of the FCRA.

30. Plaintiff Ryan Boyer obtained a tri-merge credit report on June 2, 2021 and noticed that Equifax still reported the Nationstar mortgage account as "Payment Status – Late 30 days". (See Exhibit "H", Plaintiff Ryan Boyer's June 2021 Tri-merge Credit Report).

31. Equifax responded to Plaintiff Gina Critelli on May 3, 2021 and still reported the Nationstar mortgage account as "Payment Status – 30 – 59 Days Late". (See Exhibit "I", Equifax's response to Gina Critelli).

32. Equifax's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiffs' disputes and failed to remedy the inaccuracies regarding the Nationstar tradeline and gave no explanation as to why the Nationstar tradeline reported with late notations.

33. Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiffs' Nationstar mortgage account.

34. Upon the Plaintiffs' request to Equifax for verification and addition regarding the Nationstar mortgage account, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiffs' information, claims, or evidence and did not make any attempts to substantially or reasonably verify the Nationstar tradeline.

35. In the alternative, Equifax failed to contact Nationstar, therefore, failed to perform any investigation at all.

36. In the alternative to the allegation that Equifax failed to contact Nationstar, it is alleged that Equifax did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

37. Experian received Plaintiffs' disputes on April 1, 2021.

38. Plaintiffs noticed in their respective tri-merge credit reports on June 2, 2021 that Experian accurately and appropriately made the corrections and specifically changed December 2020 from "late" to "CLS" and removed any reference to late payments for the Nationstar tradeline. (See Exhibit "H", See Exhibit "J", Plaintiff Gina Critelli's June 2021 Tri-merge credit report).

39. Trans Union responded to Plaintiff Ryan Boyer's dispute on or about April 23, 2021 and stated, "INVESTIGATION RESULTS – DISPUTED INFORMATION UPDATED: A change was made to the item(s) based on your dispute." Below, the Pay Status showed as ">Paid, Closed; was 30 days past due date<". This was wrong because he demonstrated he was not 30 days past due. (See Exhibit "K", Trans Union's Response to Ryan Boyer).

40. Trans Union received Plaintiff Gina Critelli's dispute on or about April 2, 2021. (See Exhibit "L", Certified Mail Receipt and Proof of Delivery for Tracking No. 70203160000115157717).

41. Upon information and belief, Trans Union did not respond to Plaintiff Gina Critelli in clear violation of the FCRA.

42. Plaintiff Gina Critelli obtained a tri-merge credit report on June 2, 2021 and noticed that Trans Union still reported the Nationstar mortgage account as "Payment Status – Late 30 days".

(See Exhibit "J").

43.     Trans Union's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiffs' disputes and failed to remedy the inaccuracies regarding the Nationstar tradeline and gave no explanation as to why the Nationstar tradeline reported with late notations.

44.     Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff s' Nationstar mortgage account.

45.     Upon Plaintiffs' requests to Trans Union for verification and addition regarding the Nationstar mortgage account, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiffs' information, claims, or evidence and did not make any attempts to substantially or reasonably verify the Nationstar tradeline.

46.     In the alternative, Trans Union failed to contact Nationstar, therefore, failed to perform any investigation at all.

47.     In the alternative to the allegation that Trans Union failed to contact Nationstar, it is alleged that Trans Union did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

## V.  GROUNDS FOR RELIEF

**COUNT I – EQUIFAX'S VIOLATION OF THE FCRA**
**(15 U.S.C. § 1681e(b))**

48.     Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

49.     Equifax violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable

procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff Carrie Ganoe.

50. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

51. Equifax knew or should have known Plaintiffs account status and payment history were inaccurate, but Equifax continued to prepare a patently false consumer report concerning Plaintiffs.

52. Despite actual and implied knowledge that Plaintiffs credit reports were and are not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiffs, and ultimately Plaintiff's creditworthiness.

53. After Equifax knew or should have known Plaintiffs account status and payment history were inaccurate, it failed to make the corrections.

54. As a result of Equifax's conduct, action, and inaction, Plaintiffs suffered damages, including, but not limited to, denial in attempts to refinance, loss in the ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

55. Equifax's conduct, action, and inaction, were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

56. Plaintiffs are entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT II – EQUIFAX'S VIOLATION OF THE FCRA
## (15 U.S.C. §1681i)

57. Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

58. Equifax violated 15 U.S.C. § 168li on multiple occasions by failing to update inaccurate information in the Plaintiffs credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a source it has reason to know is unreliable.

59. As a result of Equifax's conduct, action, and inaction, Plaintiffs suffered damages, including, but not limited to, denial in attempts to refinance, loss in the ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

60. Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

61. The Plaintiffs are entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT III – TRANS UNION'S VIOLATION OF THE FCRA
## (15 U.S.C. §1681e(b))

62. Plaintiff s reallege and incorporates all paragraphs above as if fully set out herein.

63. Trans Union violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiffs.

64. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

65. Trans Union knew or should have known Plaintiffs account status and payment history were inaccurate, but Trans Union continued to prepare a patently false consumer report concerning Plaintiffs.

66. Despite actual and implied knowledge that Plaintiffs credit reports were and are not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

67. After Trans Union knew or should have known Plaintiffs account status and payment history were inaccurate, it failed to make the corrections.

68. As a result of Trans Union's conduct, action, and inaction, Plaintiffs suffered damages, including, but not limited to, denial in attempts to refinance, loss in the ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the

mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

69. Trans Union's conduct, action, and inaction, were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

70. Plaintiffs are entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT IV – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

71. Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

72. Trans Union violated 15 U.S.C. § 168li on multiple occasions by failing to update inaccurate information in the Plaintiffs credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a source it has reason to know is unreliable.

73. As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in the ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

74. Trans Union's conduct, action, and inaction, were willful, rendering it liable for

actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

75. Plaintiffs are entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT V – NATIONSTAR'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

76. The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

77. Defendant Nationstar violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiffs' dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify, and/or update the information.

78. Nationstar further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Nationstar representation within Plaintiffs' credit files with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiffs' disputes of the Nationstar representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Nationstar representations to the consumer reporting agencies.

79. As a result of Nationstar's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, denial in attempts to refinance, loss in the ability to finance

goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

80. Nationstar's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

### VI.  VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

81. Plaintiffs will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

### VII.  DAMAGES

82. Plaintiffs respectfully request that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Texas.

83. Plaintiffs respectfully request that this Honorable Court award Plaintiffs their litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this

litigation, in accordance with the provisions of the FCRA and/or other laws.

84. The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiffs.

85. Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiffs and have been a substantial factor in causing credit denials and other damages.

86. Plaintiffs suffered a variety of damages, including economic and non-economic damages as prayed for herein.

87. Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiffs.

88. Defendants are liable unto Plaintiffs for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

WHEREFORE PREMESIS CONSIDERED, Plaintiffs, Ryan Boyer and Gina Critelli, pray that this Honorable Court:

A. Enter Judgment in favor of Plaintiffs and against Defendants Equifax Information Services LLC, Trans Union LLC, and Nationstar Mortgage LLC, jointly, severally, and in solido, for

all reasonable damages sustained by Plaintiffs, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

B. Find that the appropriate circumstances exist for an award of punitive damages to Plaintiffs;

C. Award Plaintiffs pre-judgment and post-judgment interest, as allowed by law;

D. Order that the CRA Defendants, Equifax Information Services LLC, Trans Union LLC, and Furnisher Defendant, Nationstar Mortgage LLC, work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiffs and/or any of Plaintiffs' personal identifiers.

E. Grant such other and further relief, in law or equity, to which Plaintiffs might show they are justly entitled.

Date Filed: July 19, 2021

Respectfully submitted,

/s/ Matthew P. Forsberg
Matthew P. Forsberg
State Bar Number 24082581
FCRA-TX@fieldslaw.com
FIELDS LAW FIRM
9999 Wayzata Blvd.

        Minnetonka, Minnesota 55305
        (612) 383-1868 (telephone)
        (612) 370-4256 (fax)

        By: */s/ Jonathan A. Heeps*
        Jonathan A. Heeps
        State Bar No. 24074387
        LAW OFFICE OF JONATHAN A. HEEPS
        Post Office Box 174372
        Arlington, Texas 76003
        Telephone (682) 738-6415
        Fax (844) 738-6416
        jaheeps@heepslaw.com


COUNSEL FOR PLAINTIFFS

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

| | |
|---|---|
| <u>July 19, 2021</u> | <u>*/s/ Matthew P. Forsberg*</u> |
| Date | Matthew P. Forsberg |